ELECTRONICALLY FILED
1/29/2019 12:58 PM
04-CV-2019-900020.00
CIRCUIT COURT OF
AUTAUGA COUNTY, ALABAMA
DEBRA HILL, CLERK

## IN THE CIRCUIT COURT OF AUTAUGA COUNTY, ALABAMA

| | |
|---|---|
| DARRYL L. BROWN, | * |
| Plaintiff(s), | * Case No. _____ |
| v. | * |
| FORD MOTOR COMPANY; Fictitious parties "A", "B", "C" whose names are Unknown to the Plaintiff's at this time, or if their names are known their identity as proper party, but whose names will be added by amendment when the aforesaid lacking knowledge is ascertained. | * JURY TRIAL DEMANDED |
| Defendant(s). | * |

## COMPLAINT

### THE PARTIES

1. Plaintiff Darryl Brown, ("Plaintiff") is an individual resident and citizen of Autauga County, Alabama.

2. Defendant, Ford Motor Company (hereinafter "Ford") on information and belief is a corporation doing business in Autauga County, Alabama.

### FACTUAL ALLEGATIONS

3. This case arises out of defects and design of a motor vehicle purchased by the Plaintiff herein.

4. On or about August 8, 2014, Plaintiff entered into a motor vehicle purchase contract with Long-Lewis for the purchase of a 2013 Ford F-250, VIN 1FT7W2BT6DEA14896 (hereinafter referred to as the "Ford" or "vehicle").

5. The vehicle was equipped with a 6.7-liter diesel engine and was purchased for

Plaintiff's personal use and enjoyment.

6. The purchase price was approximately $50,000.00.

## FORD'S SCHEME

7. In 2011 Ford introduced a new 6.7-liter "Power Stroke" diesel engine used in both the model F-250 and the F-350 Pick Up Trucks. Ford claimed that the new engine enabled "a remarkable reduction" in emissions and fuel consumption.

8. Ford marketed these vehicles as environmentally-friendly trucks that combined high fuel efficiency and performance with very low emissions. Ford touted the vehicles as the "cleanest Super Duty diesel ever" with "best-in-class fuel economy" and using a special combustion system to meet state and federal emissions requirements.

9. Ford lied to both consumers and regulators because in real world use the diesel engines emitted Nitrogen Oxide (NOX) and other pollutants in excess lawful amounts.

10. The plaintiff's vehicle was equipped with a Ford 6.7-liter "Power Stroke" diesel engine.

11. As part of the fraud and scheme, Ford charged a premium price for vehicles with the "Power Stroke" engine.

12. Plaintiff could have purchased a gasoline model truck for much less but, relying on representations made by Ford, paid a premium price for a vehicle with the "Power Stroke" diesel engine.

13. The representations by Ford that the engine was environmentally-friendly and a "clean diesel" were false and at all relevant times Ford knew they was false.

14. The representations about fuel economy and the reduction of emissions from the "Power Stroke" engines only occurred when the vehicle operated in the conditions present in an

emissions testing environment. With day-to-day use outside of a testing environment, the vehicles polluted heavily, and the promised fuel economy was achieved by reduction of the emission controls.

### PATTERN AND PRACTICE

15. Ford F-250 and F-350 Super Duty vehicles with diesel engines manufactured from 2011 to 2017 produce emissions in excess of the required legal standards.

16. Ford successfully marketed and sold tens of thousands of these premium priced vehicles as "clean." In doing so, Ford purposefully and intentionally breached air pollution laws and regulations by manufacturing and selling in the United States vehicles that made use of "defeat devices," which included software designed to "cheat" during emissions tests making it appear that the vehicles achieved low emissions levels.

17. These vehicles were defective as stated herein, and Plaintiff has suffered damages for Ford's breach of warranty and misrepresentation such as, loss of money, loss of use of the vehicle, premature deprecation, loss of value, loss of time, aggravation and mental anguish.

18. The statute of limitations is tolled as to Plaintiff's claims, due to the commencement of a nationwide class action, based on same or similar allegations, *Len Gamboa, et. al. v. Ford Motor Company, et. al.* Case 18-cv-10106 filed 01/10/2018, filed in the Eastern District of Michigan. See *American Pipe & Construction Co v. State of Utah*, 414 U.S. 538.

19. Plaintiff relied on representations contained in Ford's media advertising and printed material when making the decision to purchase the vehicle at issue.

20. If Plaintiff had known about these defects at the time of sale Plaintiff would not have purchased the vehicle or would have paid less for it.

21. Based on Ford's omissions and/or misrepresentations, Plaintiff suffered a loss of

3

money, property, and/or value of their vehicle, including, but not limited to, out of pocket costs.

22. Plaintiff's purchase of the vehicle was accompanied by express warranties offered by Ford and extending to the Plaintiff.

23. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the vehicle.

24. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the warranty guide and the Ford owner's manual.

25. Although the emissions control was the major problem with the vehicle Plaintiff has had numerous other problems with the vehicle resulting in loss of use of the vehicle, lost time, loss of money and aggravation.

26. Ford's brochures also represented that the Super Duty has "best-in-class towing capabilities," but suppressed the fact that this capability was only possible by software that turned down emission controls.

27. The representations by Ford that the engine was environmentally-friendly and a "clean diesel" were false and at all relevant times Ford knew they was false.

28. Plaintiff could have purchased a model comparable gasoline powered vehicle for approximately $10,000 less, but instead paid an inflated price the "clean diesel."

## COUNT ONE
## FRAUD

29. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

30. This action is brought pursuant to the Code of Alabama, 1975, § 6-5-100, 6-5-101,

and other applicable law.

31. The vehicle was defective as described above.

32. Ford was aware of the defects of said vehicle and failed or refused to correct said defects before it was offered for sale to the public

33. Said representations regarding the quality of the vehicle and the Power Stroke Engine specifically were false and Ford knew they were false. Ford intentionally suppressed the fact that the vehicle had numerous defects as stated herein.

34. Plaintiff believed said representations, reasonably relied on them and innocently acted upon them to their detriment by purchasing said vehicle.

35. As approximate result of said representations made by Ford, Plaintiff was caused to suffer the following injuries and damages:

    a. Loss of money

    b. Mental anguish and embarrassment.

32. Plaintiff claims punitive damages of the defendant because of the intentional or gross and reckless nature of the fraud.

WHEREFORE, Plaintiff demands judgment against the Ford as follows:

    a. Compensatory and Consequential damages.

    b. Punitive damages.

    c. Reasonable attorney's fees

    d. Costs of this action.

    e. Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT TWO
## FRAUD IN THE INDUCEMENT

33. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

34. Ford represented to Plaintiff that said vehicle made the subject of this action would be delivered free from defects and if there were defects, the said defects would be promptly repaired.

35. In fact, said vehicle was not free from defects, was not fit for its ordinary and particular uses.

36. The representations above, which were made to Plaintiff, were, in fact, false and fraudulent. Said representations made by Ford induce the purchase said vehicle

WHEREFORE, Plaintiff demands judgment against the defendant, Ford, for actual and punitive damages, separately and severally, in an amount in excess of the jurisdictional requirements of this court, plus costs and interest.

## COUNT THREE
## BREACH OF EXPRESS WARRANTY

37. Plaintiff realleges and adopts all the foregoing relevant paragraphs contained in this complaint.

38. Ford represented and warranted to Plaintiff that said vehicle purchased was free of defects. It was further represented to Plaintiff that if any defects were discovered that the same would be promptly corrected.

39. After purchasing said, vehicle Plaintiff discovered the defects as stated which render the vehicle unsafe and less valuable.

40. Plaintiff alleges that there are other numerous defects not listed above.

WHEREFORE, Plaintiff demands judgment against the defendant, Ford, as follows:

    a.    Compensatory punitive damages.

    b.    Consequential damages.

    c.    Reasonable attorney's fees pursuant to Ala. Code 1975 § 8-20-8.

    d.    Costs of this action.

    e.    Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY

41. Plaintiff realleges and adopts all of the foregoing relevant paragraphs in this complaint.

42. At the time of the Plaintiff's purchase, Defendant expressly warranted and warranted by implication that said vehicle was free from defects and was fit for its ordinary and particular uses or if there were defects, that the same would be promptly repaired to the Plaintiff's satisfaction.

43. The total cash price of the said vehicle at issue in the cause was $44,000.00 and Plaintiff found that the said vehicle was defective as stated above.

44. Plaintiff further aver that the defendant, Ford, has been notified of the existence of said defects. Plaintiff was promised that the defects would be repaired to their satisfaction, but the defendant, Ford, failed and/or refused to correct said defects.

WHEREFORE, Plaintiff demands judgment against the defendant, Ford, as follows:

    a.    Compensatory and punitive damages.

    b.    Consequential damages.

    c.    Reasonable attorney's fees.

    d.    Costs of this action.

e. Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT FIVE
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. § 2301, et seq.)

45. Plaintiff herein incorporates by reference every prior allegation as though here fully restated and realleged.

46. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter referred to as the "Warranty Act"), 15 U.S.C. § 2301(3).

47. The manufacturer, Ford, is a "seller" and "warrantor" as defined by the Warranty Act, 15 U.S.C. § 2301(4), (5).

48. The vehicle in question is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(1).

49. The vehicle in question was manufactured and sold after July 4, 1975.

50. The express warranties given by Manufacturer and/or required by statute to be given by the Manufacturer, pertaining to the vehicle are "written warranties" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

51. That this sales transaction is subject to the provisions and regulations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq*).

52. The above-described actions, including, but not limited to, the failure of Defendant to honor the warranty and/or to seek arbitration contrary to the Warranty Act, and/or to ignore the rules and regulations constitute breach of the written warranties and of the Warranty Act.

WHEREFORE, Plaintiff is entitled to recovery of all monies paid on the vehicle and to damages in the form of all out-of-pocket expenses and all other damages, including exemplary and consequential damages as determined by the truer of fact, but exceeding not $49,000.00, together

with all costs and actual reasonable attorney fees as provided for by statute and for whatever other legal and equitable relief the Court may deem proper.

DATED this the 29th day of January 2019.

/s/ Earl P. Underwood, Jr.
**EARL P. UNDERWOOD, JR. (UND008)**

**UNDERWOOD & RIEMER, PC**
21 South Section Street
Fairhope, Alabama 36532
Telephone: (251) 990-5558
Facsimile: (251) 990-0626
epunderwood@alalaw.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

/s/ Earl P. Underwood, Jr.

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT:**

**Ford Motor Company**
c/o C T Corporation System
2 N Jackson St. Suite 605
Montgomery AL 36104